STATE OF NORTH CAROLINA v. LAWRENCE EUGENE PETERSON, JR.

No. 328A97

(Filed 25 June 1999)

## 1. Jury— capital sentencing—instructions regarding parole

The trial court did not err in a capital sentencing hearing by not instructing the jury that life imprisonment meant life imprisonment without parole at the beginning of the jury selection process as well as on each and every other occasion in which the issue of life imprisonment arose. The trial court complied with the provisions of the capital sentencing statute which provide for such an instruction, nothing in the record demonstrates that the jury did not believe the trial court or did not follow the instructions, and the trial court did not permit the prosecutor to inject inaccurate and misleading information into the sentencing proceeding which defendant was not permitted to rebut. N.C.G.S. § 15A-2002.

## 2. Jury— capital sentencing—excusal for cause

The trial court did not abuse its discretion in a capital sentencing proceeding by concluding that a prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath and excusing him for cause.

## 3. Sentencing— capital sentencing—mitigating circumstances—no significant history of prior criminal activity

The trial court did not err in a capital sentencing proceeding by submitting to the jury the statutory mitigating circumstance that defendant possessed no significant history of prior criminal activity even though defense counsel objected to the submission and believed that the evidence did not support it. Defendant's prior history consists of robbery and armed robbery convictions arising from a single event when he was nineteen years old; the crimes in this case were committed when he was twenty-five years old; defendant served his time for the prior offenses; and all the evidence indicated that he had put his criminal past behind him, established a stable marriage, and held several jobs to make his living. The prosecution did not argue that defendant requested this mitigator and the trial court was careful to instruct the jury that defendant did not request its submission but that the

submission was required as a matter of law. The submission of the no significant history of prior criminal activity mitigator did not prejudice defendant nor injure the defense team's credibility. N.C.G.S. § 15A-2000(f)(1).

**4. Sentencing— capital sentencing—mitigating circumstances—defendant's age**

The trial court did not err in a capital sentencing proceeding by not submitting the statutory mitigating circumstance of defendant's age at the time of the crime. While defendant presented evidence that he led a restrained childhood under a strict guardian and did not make many friends, the record reveals no evidence from which a jury could conclude that defendant was mentally immature and uncontroverted evidence showed that defendant completed his GED, that his reading skills were at a normal level for his educational level, that he established a stable marital relationship, that he handled his own finances, that he worked for his father-in-law when his father-in-law was ill, that he worked at American Express as a customer service representative, and that he worked at McDonald's as a crew leader. N.C.G.S. § 15A-2000(f)(7).

**5. Sentencing— capital sentencing—mitigating circumstances—peremptory instructions**

The trial court did not err in a capital sentencing proceeding by refusing to give peremptory instructions concerning nonstatutory mitigating circumstances where, despite defendant's contention, he did not make a specific request for any peremptory instructions.

**6. Criminal law— prosecutor's closing argument—capital sentencing**

The trial court did not err in a capital sentencing proceeding by overruling defendant's objections to the prosecutor's closing argument as to the victim's last thoughts and that she died because of greed. Considered in context, the argument was not urging jurors to consider facts without an evidentiary basis but was arguing permissible inferences by asking the jurors to consider defendant's apparent motive.

**7. Criminal law— prosecutor's closing argument—capital sentencing**

The trial court did not err in a capital sentencing proceeding by overruling defendant's objection to the prosecutor's closing argument that the jury was the conscience of the community. The prosecutor did not ask the jurors to render their decision based on community sentiment and it has been stated repeatedly that the prosecutor may properly urge the jury to act as the voice and conscience of the community.

**8. Criminal law— prosecutor's closing argument—capital sentencing**

The trial court did not abuse its discretion in a capital sentencing proceeding by failing to intervene ex mero motu where the prosecutor argued as to the victim being a fine woman who had been married almost forty-five years; as to the randomness of the killing and that the victim had not provoked defendant; and that murder was defendant's business and that this murder was committed for pecuniary gain.

**9. Sentencing— capital sentencing—instructions—extenuating circumstances**

The pattern jury instruction used by the trial court to define the term "mitigating circumstance" in capital sentencing is internally consistent and meaningful and does not confuse jurors to such a degree that it violates principles of due process and fundamental fairness.

**10. Sentencing— capital sentencing—instructions—no conflict with issues and recommendation form**

The trial court did not err in a capital sentencing proceeding where defendant contended that the court's oral instructions concerning the issues and recommendation as to punishment form conflicted with the information on the form. The oral instructions reflect nothing more than that the trial court, as promised, took up the four issues on the form in greater detail in explaining the form to them. No conflict exists between the issue as stated on the form and the trial court's instructions.

**11. Sentencing— capital sentencing—not vague and overbroad—consideration of mitigating factors**

The trial court did not err in a capital sentencing proceeding where defendant contended that the death penalty statute is

vague and overbroad and that the jury did not give just consideration to undisputed mitigating factors. The record reflects that evidence was presented which reasonable jurors could conclude would not permit their finding the statutory mitigating circumstances; the jury could have found that the nonstatutory mitigating circumstances did not possess any mitigating value even if they found that all of the nonstatutory mitigating circumstances existed, so that their failure to find these circumstances despite uncontroverted evidence does not render their decision arbitrary or reflect a lack of due consideration; and defendant is in error in asserting that all the nonstatutory mitigating circumstances were undisputed.

**12. Sentencing— capital sentencing—death sentence not arbitrary**

The jury's findings of two aggravating circumstances in a capital sentencing proceeding were supported by the evidence and nothing in the record suggests that the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

**13. Sentencing— capital sentencing—death penalty— proportionate**

A death penalty for a first-degree murder was proportionate where defendant, using an assault rifle, gunned down a totally defenseless elderly woman after she had already given him all the money from the cash register in the family-run grocery store. This case is not substantially similar to any of the cases in which the death sentence was found disproportionate and is more similar to cases in which the death sentence was found proportionate.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Helms, J., on 12 December 1996 in Superior Court, Richmond County, upon defendant's plea of guilty to first-degree murder. Defendant's motion to bypass the Court of Appeals as to his appeal of an additional judgment was allowed by the Supreme Court on 14 September 1998. Heard in the Supreme Court 13 April 1999.

*Michael F. Easley, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

*Thomas R. Sallenger for defendant-appellant.*

**STATE v. PETERSON**

[350 N.C. 518 (1999)]

PARKER, Justice.

Defendant was indicted on 19 February 1996 for the 5 July 1995 robbery with a dangerous weapon and first-degree murder of sixty-seven-year-old Jewel Scarboro Braswell, the proprietor of a grocery and general store in Richmond County. On 2 December 1996, prior to jury selection, defendant entered a plea of guilty to first-degree murder on the basis of premeditation and deliberation and a plea of guilty to robbery with a dangerous weapon. At the conclusion of a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury found as aggravating circumstances that defendant had been previously convicted of a felony involving the use of violence and that the murder was committed for pecuniary gain. Of the three statutory and twelve nonstatutory mitigating circumstances submitted to the jury, none was found by any of the jurors. The jury recommended a sentence of death for the first-degree murder, and the trial court sentenced defendant accordingly. The trial court also sentenced defendant to 103 to 133 months' imprisonment for the robbery conviction.

The evidence presented at the sentencing hearing showed that around 9:00 a.m. on the morning of 5 July 1995, defendant, twenty-five years old at the time, pawned some appliances at a local pawn shop in Winston-Salem and redeemed his Chinese SKS semiautomatic assault rifle, a weapon that can be bought in many department stores and that holds ten rounds of ammunition per magazine clip. Around midday he bought some gas and a soft drink in Richmond County at Braswell's Grocery. Mr. Lewis Braswell, sixty-seven, waited on defendant and gave him his change. Defendant asked Mr. Braswell if he could pull his car over and rest for a while, and Mr. Braswell replied that that would be fine. Mrs. Jewel Braswell, also sixty-seven years old and the wife of Lewis Braswell for forty-four years, then came over from their home, directly adjacent to the store, and took care of the store while Mr. Braswell went home to eat lunch.

While in his kitchen, Mr. Braswell heard defendant's voice over the intercom connecting the house to the store; so he walked back to the store. Looking in the back window of the store, he saw his wife showing defendant out the front door and telling him, "Drive careful out there; there's a lot of traffic on the road today." Mr. Braswell then returned to his house to eat lunch. He then heard defendant's voice over the intercom a second time and, thinking something was not right, went back to the store again. Halfway there, he heard the rapid firing of gunshots.

**STATE v. PETERSON**

[350 N.C. 518 (1999)]

When Mr. Braswell reached the rear window of the store, he observed defendant, alone, walking out the front door with what looked like a rifle in his left hand down by his side. Mr. Braswell entered and found his wife behind the cash register, bloodied and with no pulse. Mr. Braswell grabbed his twelve-gauge shotgun, ran out the front door, and saw defendant pulling away. Braswell fired two shots, striking defendant's vehicle; but defendant got away, driving north. Mr. Braswell then called for an ambulance and for the police.

Law enforcement officers quickly tracked defendant's vehicle. Ultimately, defendant swerved off the road onto the right-hand shoulder, exited the vehicle, and was arrested. The officers found the assault rifle on the back seat with the safety off, one round in the chamber, and four more bullets in the magazine. Defendant produced $69.00 from his pants pocket as the proceeds from the robbery and killing. He also gave a statement to police indicating that when he went back into the store with the rifle, he ordered the victim to open the cash register and give him the money, and then shot the victim.

The pathologist who performed the autopsy on Mrs. Braswell testified that he found five gunshot wounds that passed completely through her body. Four of those wounds caused massive hemorrhaging and damage to the lungs, liver, bowel, and spinal cord: (1) one entered the right chest and exited out the right back; (2) another entered just above the right clavicle and exited further down on the right back; (3) a third entered the base of the neck and exited out the right shoulder region; (4) another entered the right upper abdomen and exited above the right buttock region; and (5) the fifth wound was to the little finger of the right hand. The cause of death was any of the four primary wounds. There were only a few tiny pieces of bullet fragments left in the body. In the counter area of the store, behind where Mrs. Braswell had been sitting when she was shot, investigators found five bullet holes and numerous bullet fragments. Investigators also found five shell casings in the store.

In support of the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance, the State introduced into evidence copies of three 1989 indictments and judgments showing that defendant had pled guilty to two counts of common law robbery and one count of armed robbery in connection with crimes committed in downtown Asheville in 1989. Defendant served his sentence for those offenses and was released from prison in 1994.

Defendant presented evidence from several of his managers and supervisors, who were shocked when they heard that defendant was charged with murder. Defendant's wife testified that they had moved to Winston-Salem when her father became ill and required assistance with his construction business. Defendant helped run the business for five or six months during his father-in-law's illness. She testified that she never saw defendant exhibit any bizarre behavior and that he sometimes suffered from depression but took no medication for it. Defendant and his wife's family maintained a close relationship, gathering for cookouts at least twice a week and helping each other with household chores. Defendant's father-in-law testified that defendant did a good job running the construction business while he recuperated. He detected nothing in defendant's character or demeanor suggesting he suffered from any mental disability.

Dr. William B. Scarborough, Jr., an expert in psychology, testified that he examined defendant and diagnosed him with "major depression of a recurrent type with what we call some psychotic features" but admitted that he possessed no evidence that defendant suffered from a psychotic episode at the time of the murder. Dr. Scarborough also found alcohol dependence and could not rule out marijuana dependence. Dr. Scarborough described defendant's childhood as "constricted," as he was raised primarily by his great-grandmother, who was critical and mean, rarely allowed defendant and his brother to venture outside of her yard, and whipped the boys with whatever she had in her hand.

On appeal to this Court, defendant brings forward seventeen assignments of error. For the reasons stated herein, we conclude that defendant's capital sentencing proceeding was free from prejudicial error and that the death sentence is not disproportionate.

## JURY SELECTION

[1] By one assignment of error, defendant contends that the trial court erred in failing to instruct the jury, at the beginning of the jury selection process, regarding defendant's ineligibility for parole if sentenced to life in prison. Defendant points specifically to the court's ruling on defendant's objection during the State's *voir dire* when the prosecutor, in explaining the sentencing proceeding and what it means when the jury "recommends" a sentence to the court, stated:

[PROSECUTOR]: Since the defendant has pled guilty . . . the issue before the jury is going to be a recommendation of punish-

ment to the Court. . . . Do not be misled by the phrase "recommendation." . . . [The judge] will enter the recommendation that the jury comes back with as their verdict. You will be given two choices, either death, the death penalty, or life imprisonment.

[DEFENSE COUNSEL]: We're going to object. It would be life in prison without parole.

COURT: Overruled.

[PROSECUTOR]: The defendant will be sentenced according to your recommendation by the judge. Do you understand that? Does everybody understand that?

Defendant concedes that later in the proceedings, during the charge to the jury prior to deliberation, the trial court instructed the jury that life imprisonment meant life imprisonment without parole. We also note that the jury was informed, by defense counsel during *voir dire* and by both the prosecution and defense counsel during closing arguments, that life imprisonment means life imprisonment without parole. Nevertheless defendant asserts that his due process rights were violated when the trial court also failed to instruct the jury during *voir dire*, as well as on each and every other occasion in which the issue of life imprisonment arose, that life imprisonment meant life imprisonment without parole. We do not agree.

The trial court in this case complied with the provisions of the capital sentencing statute, which provides in part that "[t]he judge shall instruct the jury, in words substantially equivalent to those of this section, that a sentence of life imprisonment means a sentence of life without parole." N.C.G.S. § 15A-2002 (1997). Nothing in the record demonstrates that the jury did not believe the trial court or did not follow its instructions as given in the charge. *See State v. Smith*, 347 N.C. 453, 460, 496 S.E.2d 357, 361, *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 91 (1998); *State v. Neal*, 346 N.C. 608, 617-18, 487 S.E.2d 734, 740 (1997), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 131 (1998). Similarly, the trial court did not, as defendant asserts, permit the prosecutor to inject inaccurate and misleading information into the sentencing proceeding which defendant was not permitted to rebut. The prosecutor's statement was not an incorrect statement of law. Defendant has shown neither error nor prejudice, and this assignment of error is overruled.

[2] In the next assignment of error, defendant contends that the trial court denied his rights under both the North Carolina Constitution

and the United States Constitution by erroneously allowing the State's excusal for cause of prospective juror Calvert. The test for determining when a juror may be excused for cause is whether his views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). The decision as to whether a juror's views would prevent or substantially impair the performance of his duties is within the trial court's broad discretion. *State v. Gregory*, 340 N.C. 365, 394, 459 S.E.2d 638, 655 (1995), *cert. denied*, 517 U.S. 1108, 134 L. Ed. 2d 478 (1996). The fact that a prospective juror "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction" is not sufficient to support an excusal for cause. *Witherspoon v. Illinois*, 391 U.S. 510, 522, 20 L. Ed. 2d 776, 784-85 (1968). Here, defendant argues that the excusal of prospective juror Calvert violated the standard in *Wainwright*, and that Mr. Calvert's objections to the death penalty were general. After reviewing the transcript, we disagree.

Prospective juror Calvert was clear when he stated, "I cannot wilfully tell somebody that they are to die." The prosecutor continued questioning him, asking, "Are those feelings so strong that you could not consider the death penalty as a possible verdict in the case?" He answered, "Yes, sir." Finally, Mr. Calvert answered "yes, sir" when the prosecutor inquired if Mr. Calvert's feelings were so strong that he could not consider death as a possible verdict regardless of the evidence. Based on this colloquy, we cannot say that the trial court abused its discretion in concluding that prospective juror Calvert's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. We overrule this assignment of error.

## SENTENCING ISSUES

[3] In another assignment of error, defendant contends that the trial court erred by submitting to the jury the (f)(1) statutory mitigating circumstance that defendant possessed no significant history of prior criminal activity, *see* N.C.G.S. § 15A-2000(f)(1) (1997), even though defense counsel objected to the submission and believed that the evidence did not support the submission. Defendant contends that this injured the defense team's credibility before the jury and saddled the defense with an impossible mitigating circumstance that it could not

defend, thereby violating defendant's Sixth Amendment rights to effective assistance of counsel and to develop and present his own theory of the case without outside interference.

Preliminarily, we note that a trial court is required by statute to submit to the jury any statutory mitigating circumstance supported by the evidence regardless of whether the defendant objects to it or requests it. *State v. Bonnett*, 348 N.C. 417, 443, 502 S.E.2d 563, 580 (1998), *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 907 (1999). Thus, there is no Sixth Amendment violation.

The test for submitting the (f)(1) mitigating· circumstance is whether a rational juror could conclude from the evidence that the defendant had no significant history of prior criminal activity. *State v. Jones*, 346 N.C. 704, 715, 487 S.E.2d 714, 721 (1997). A significant history for purposes of N.C.G.S. § 15A-2000(f)(1) is one that is likely to have influence or effect upon the recommendation of the jury as to the crime for which the defendant is being sentenced. *Id.* When the trial court is deciding whether a rational juror could reasonably find the (f)(1) circumstance to exist, the "nature and age of the prior criminal activities" are important considerations. *State v. Geddie*, 345 N.C. 73, 102, 478 S.E.2d 146, 161 (1996), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 43 (1997).

In *State v. Walker*, 343 N.C. 216, 469 S.E.2d 919, *cert. denied*, 519 U.S. 901, 136 L. Ed. 2d 180 (1996), the defendant was tried and convicted of first-degree murder based on premeditation and deliberation and conspiracy to commit murder. At sentencing, evidence was presented that the defendant had a history that included one conviction for attempted second-degree murder; and there were also reports, although no convictions, that the defendant had sold drugs. *Id.* at 223, 469 S.E.2d at 922-23. In that case the defendant's previous crime occurred when he was eighteen years old, while the crime for which he was being sentenced occurred when he was twenty-seven, with no intervening convictions. *Id.* We held that a reasonable juror could infer from this evidence that the defendant's prior criminal activity was not significant and that submission of the (f)(1) mitigator was not prejudicial to the defendant. *Id.* at 223, 469 S.E.2d at 923.

Similarly, in the present case, defendant's prior history consists of robbery and armed robbery convictions arising from a single event on 6 August 1989, when defendant was nineteen years old. Defendant served his time for those offenses; and all the evidence indicated that defendant had put his criminal past behind him, established a stable

marriage, and held several jobs to make his living. He had no other convictions. Defendant committed the crimes in this case on 5 July 1995, when he was twenty-five years old. Thus, we hold as we did in *Walker* that the submission of the (f)(1) mitigator did not prejudice defendant. Nor did it injure the defense team's credibility before the jury. The prosecution did not argue that defendant requested the (f)(1) mitigator, and the trial court was careful to instruct the jury that defendant did not request its submission but that its submission was "required as a matter of law because there is some evidence from which you could but are not required to find this mitigating circumstance." Defendant's assignment of error is overruled.

**[4]** In the next assignment of error, defendant contends that the trial court erred by failing to submit the statutory mitigating circumstance of defendant's age at the time of the crime. *See* N.C.G.S. § 15A-2000(f)(7). Notwithstanding the fact that defendant was twenty-five years old at the time of the offense, he argues that there was evidence from which a jury could conclude that defendant was mentally immature and that the trial court was thus required to submit the issue to the jury. Defendant cites as evidence to support his position the testimony of the expert psychologist that defendant was raised under the tutelage of a very strict great-grandmother, that he and his brother were severely limited in their socialization skills as young teenagers, that defendant had few friends and did not maintain relationships or date while he was growing up, and that he was ridiculed because of his physical appearance.

When evaluating the (f)(7) mitigating circumstance, this Court has characterized "age" as a "flexible and relative concept." *State v. Johnson*, 317 N.C. 343, 393, 346 S.E.2d 596, 624 (1986). We have also noted that "the chronological age of a defendant is not the determinative factor under G.S. § 15A-2000(f)(7)." *State v. Oliver*, 309 N.C. 326, 372, 307 S.E.2d 304, 333 (1983). " 'Any hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances.' " *Id.* (quoting *Giles v. State*, 261 Ark. 413, 421, 549 S.W.2d 479, 483, *cert. denied*, 434 U.S. 894, 54 L. Ed. 2d 180 (1977)). However, while defendant has presented evidence that he led a restrained childhood under a strict guardian and did not make many friends, our review of the record reveals no evidence from which a jury could conclude that defendant was mentally immature. To the contrary, uncontroverted evidence showed that defendant completed his GED; that his reading skills were at a normal level

for someone of his educational level; that he established a stable marital relationship; that he handled his own finances, including paying bills and obtaining financing for a new car; that he worked for his father-in-law when his father-in-law was ill and needed assistance; that he worked at American Express as a customer service representative; and that he worked at McDonald's as a crew leader. Based on this evidence, we conclude that the trial court did not err in failing to submit the age statutory mitigating circumstance.

[5] In defendant's next assignment of error, he contends that the trial court erroneously refused to give peremptory instructions concerning nonstatutory mitigating circumstances despite a defense request that it give such peremptory instructions. Defendant cites the transcript page upon which the request was supposedly made; but upon review of the entire transcript, we cannot find any such request. The passage cited by defendant is as follows:

> [DEFENSE COUNSEL]: Your Honor, this is fine. Are there any peremptory . . . mitigating instructions?

> COURT: No. The only mitigating factor, number one, second paragraph under number one. That's the language I decided I better give after seeing that case.

> [DEFENSE COUNSEL]: That would be appropriate.

Moreover, following the trial court's final instructions to the jurors, and outside the jury's presence, defense counsel voiced no objection to the instructions as given without any peremptory instructions.

This Court has held that "[b]efore the defendant will be entitled to a peremptory instruction upon a mitigating circumstance, he must specifically request a peremptory instruction." *State v. Womble*, 343 N.C. 667, 684, 473 S.E.2d 291, 301 (1996), *cert. denied*, 519 U.S. 1095, 136 L. Ed. 2d 719 (1997); *see also State v. Skipper*, 337 N.C. 1, 41, 446 S.E.2d 252, 274 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995). The failure of a trial judge to give a peremptory instruction will not be held error where the defendant did not make a request for such instruction. *State v. Johnson*, 298 N.C. 47, 77, 257 S.E.2d 597, 618-19 (1979). As we said in *Johnson*, "the trial judge should not . . . be required to determine on his own which mitigating circumstance is deserving of a peremptory instruction in defendant's favor. In order to be entitled to such an instruction defendant must timely request it." *Id.* Since in this case defendant did not make a specific request for any peremptory instructions, we overrule this assignment of error.

**[6],[7]** In another argument defendant contends that the trial court erred by overruling defendant's objections to portions of the prosecutor's closing argument. Defendant cites as improper the following arguments:

[PROSECUTOR]: . . . [A]nd members of the jury, what were [Mrs. Braswell's] last thoughts as [defendant] stood over her? Could it . . . perhaps have been, "Why? Why did I have to die this way?"

[DEFENSE COUNSEL]: Objection.

COURT: Overruled.

[PROSECUTOR]: Why? I ask you to ask yourself that question. Why did Jewel Braswell have to die in that store, the store she and her husband ran . . . for forty-seven years? . . . Why? Could she have identified him? Probably not. Would they have caught him? Maybe not. He was going in the opposite direction from where he told Mr. Braswell he was going. That's the question that haunts us today, that the Braswells will ask themselves from now on. Why? And, members of the jury, there can be but one answer. Why did she die? (Writing "Greed" on board) Greed. One man's greed for more.

    . . . .

[PROSECUTOR]: Members of the jury[,] you are the conscience of the community. Your verdict will send a message to this defendant that the people—

[DEFENSE COUNSEL]: Objection to this statement.

COURT: Overruled.

[PROSECUTOR]: —of this county shall not put up with this. By your verdict—

[DEFENSE COUNSEL]: Object to this.

COURT: Overruled.

[PROSECUTOR]: —you will send a message to this defendant: Beware. You cannot do this here. We will not tolerate your murder.

Defendant contends that the first argument went beyond, and invited the jurors to ignore, the evidence that had been presented and that

the second argument improperly appealed to the jurors to consider community and family sentiment in reaching their verdict.

As a general proposition, counsel is allowed wide latitude in the jury argument during the capital sentencing proceeding. *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992). Counsel is permitted to argue the facts which have been presented, as well as reasonable inferences which can be drawn therefrom. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). Further, arguments are to be viewed in the context in which they are made and the overall factual circumstances to which they refer. *Womble*, 343 N.C. at 692-93, 473 S.E.2d at 306.

Applying these principles to the first argument cited by defendant, we find no impropriety. Considered in context, the prosecutor's argument was not urging the jurors to consider facts without an evidentiary basis; rather, the prosecutor was arguing permissible inferences by asking the jurors to consider defendant's apparent motive for committing the robbery and murder in this case. The second argument is likewise not improper. The prosecutor did not ask the jurors to render their decision based on community sentiment or " 'to lend an ear to the community rather than a voice.' " *State v. Jones*, 339 N.C. 114, 161, 451 S.E.2d 826, 852 (1994) (quoting *State v. Scott*, 314 N.C. 309, 312, 333 S.E.2d 296, 298 (1985)), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995). This Court has repeatedly stated that the prosecutor may properly urge the jury to act as the voice and conscience of the community. *See, e.g., State v. Bishop*, 346 N.C. 365, 396, 488 S.E.2d 769, 786 (1997); *State v. Campbell*, 340 N.C. 612, 635, 460 S.E.2d 144, 156 (1995), *cert. denied*, 516 U.S. 1128, 133 L. Ed. 2d 871 (1996); *State v. Brown*, 320 N.C. 179, 204, 358 S.E.2d 1, 18, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

[8] Defendant also cites two other portions of the prosecutor's closing argument to which defendant did not object at the time but which he now contends were improper. In the first instance the prosecutor argued as follows: "Jewel Braswell was a fine woman. She was a beautiful woman. She was a wife, forty-five years lacking ten days. Forty-five years his partner in life. And she was more than that." In the second instance the prosecutor argued:

> And you know, the randomness of it, it could have as easily been you in that store or your mother or your family or your husband or your wife. Jewel Braswell didn't do anything to provoke him.

Murder is this defendant's business, and death is his calling card. Was this murder committed for pecuniary gain? Yes.

When counsel has failed to object, the standard of review on appeal is whether the argument was so grossly improper that the trial court abused its discretion in not intervening *ex mero motu.* "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson,* 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979). We hold that the trial court did not abuse its discretion by failing to intervene *ex mero motu* during these two portions of the prosecutor's closing argument. These assignments of error are overruled.

**[9]** In the next assignment of error, defendant contends that the pattern jury instruction used by the trial court to define the term "mitigating circumstance" confuses jurors to such a degree that it violates principles of due process and fundamental fairness and defendant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments as well as his rights guaranteed by Article I, Sections 18, 19, 23 and 27 of the North Carolina Constitution. The crux of defendant's argument on appeal is his contention that the use of the word "extenuating" in the instruction creates an unavoidable internal conflict. The pattern instruction provides as follows:

A mitigating circumstance is a fact or group of facts, which do not constitute a justification or excuse for a killing, or reduce it to a lesser degree of crime than first-degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first-degree murders.

N.C.P.I.—Crim. 150.10 (1997). Defendant argues that "extenuating," as defined in *Webster's New World Dictionary* and other dictionaries, necessarily contains the meaning "serving as an excuse or justification" and that this conflicts directly with the mandate of the pattern instruction that a mitigator is not something that serves as a justification or excuse for a killing. We find defendant's analysis to be misguided. The *American Heritage Dictionary* 479 (2d college ed. 1991) defines the term "extenuate" first as "[t]o lessen or attempt to lessen the magnitude or seriousness of by providing partial excuses." *Black's Law Dictionary* 584 (6th ed. 1990) defines "Extenuating Circumstances" as "Such as render a delict or crime less aggravated, heinous,

or reprehensible than it would otherwise be, or tend to palliate or lessen its guilt. Such circumstances may ordinarily be shown in order to reduce the punishment or damages." Defendant ignores the definition meaning simply "to lessen"; instead, he seizes upon that part of the definition of "extenuate" meaning "to serve as an excuse." Clearly, in context, the word "extenuating" is employed to mean "to lessen" or "to palliate." Further, defendant misreads the instruction and would, in effect, apply his interpretation of "extenuating" to the word "killing" in the first clause when the term in fact applies only to the word "culpability" in the second clause. Thus, the instruction is internally consistent and meaningful since it provides that a mitigating circumstance is a fact which, while it does not serve as a justification or excuse for a killing or reduce the degree of the crime, nevertheless extenuates, or lessens, the call for extreme punishment. Finally, this Court has previously upheld the definition of mitigating in the pattern jury instruction. *See State v. Cagle*, 346 N.C. 497, 510, 488 S.E.2d 535, 544, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 614 (1997). Defendant's assignment of error is overruled.

[10] In defendant's next assignment of error, he contends that he suffered deprivations of his constitutional rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments as well as by Article I, Sections 19, 23, 24, and 27 of the North Carolina Constitution when the trial court gave oral instructions concerning the "Issues and Recommendation as to Punishment" form which conflicted with the written information on the form itself. Defendant further contends that the oral instructions were correct and that the written instructions, which have a greater impact on the jury by virtue of their being taken into the jury deliberation room, were erroneous in that they provided no guidance for the situation in which no mitigating circumstances were found. The written form provided the following as to sentencing Issue IV:

Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances you found is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by one or more of you?

The trial court's oral instructions provided as follows:

Now, in the event you do not find the existence of any mitigating circumstances, you must still answer this issue. Now, in such

case you must determine whether the aggravating circumstances found by you are of such value, weight, importance, consequence or significance as to be sufficiently substantial to call for the imposition of the death penalty.

Defendant argues that the lack of guidance in the written form allowed the jurors to impermissibly embark on their own course of decision-making in accordance with the written instructions. Defendant's position is without merit. The issues on the "Issues and Recommendation as to Punishment" form are not instructions, rather they are questions to be answered as required by the capital sentencing proceeding statute, N.C.G.S. § 15A-2000(c)(1)-(3). The oral instructions reflect nothing more than that the trial court, as promised to the jurors, "[took] up these four issues with [them] in greater detail, one by one," in explaining the form to them. No conflict exists between the issue as stated on the form and the trial court's oral instructions. The oral instruction merely advised the jurors how to handle Issue IV in the event the jurors found no mitigating circumstances. This assignment of error is overruled.

**[11]** In defendant's next assignment of error, he contends that North Carolina's death penalty statute is vague, overbroad, and lacking in sufficient guidance and allowed the jury to apply the death penalty in an arbitrary manner in his case. Specifically, defendant asserts that the jury simply concluded that it would impose the death penalty against him and that it did not give just consideration to the "numerous undisputed mitigating factors" he had submitted. Defendant's contention, however, is flawed.

Three statutory mitigating circumstance were submitted to the jury: that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000 (f)(6); and the catchall, any other circumstance arising from the evidence which the jury deemed to have mitigating value, N.C.G.S. § 15A-2000(f)(9). As noted earlier defendant objected to the submission of the (f)(1) mitigator. The record reflects that evidence was presented during the proceeding which reasonable jurors could conclude would not permit their finding these circumstances, namely, that defendant's pleading guilty to two counts of robbery and one count of robbery in 1989 was significant prior criminal activity and that defendant's capacity was not impaired at the time of the crimes.

**STATE v. PETERSON**

[350 N.C. 518 (1999)]

Defendant also submitted twelve nonstatutory mitigating circumstances; presumably, these are the circumstances he contends are "undisputed." In order for a juror to accept a circumstance as mitigating, the juror must conclude both that the circumstance exists and also that it has mitigating value. *State v. Lynch*, 340 N.C. 435, 475-76, 459 S.E.2d 679, 699-700 (1995), *cert. denied*, 517 U.S. 1143, 134 L. Ed. 2d 558 (1996); *State v. Green*, 336 N.C. 142, 173-74, 443 S.E.2d 14, 32-33, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). In this case, even if the jurors could have found that all the nonstatutory mitigating circumstances existed, they could also have found that the circumstances did not possess any mitigating value. For example, defendant submitted the following circumstances: "The defendant lacked a significant relationship with his father as a child," and "[t]he defendant was gainfully employed at the time of his arrest." Although uncontroverted evidence was presented establishing the existence of these circumstances, the jurors' failure to find them does not render their decision arbitrary or reflect a lack of due consideration of the mitigating evidence.

Moreover, defendant is simply in error when he asserts that all the nonstatutory mitigating circumstances are "undisputed." For example, he submitted the circumstance that "[t]he defendant cooperated with law enforcement officers at the scene of his arrest in Montgomery County." Evidence was presented, however, from which jurors could reasonably conclude that defendant led police on a high-speed chase, endangered others on the road, and appeared to contemplate reaching into the back seat for his assault rifle before finally deciding to give himself up. Defendant cites nothing else from the record to support his assertion that the jurors failed to give just consideration to factors in mitigation of his sentence. This assignment is overruled.

## PRESERVATION ISSUES

Although not designated preservation issues, defendant raises six additional issues which have been decided contrary to his position previously by this Court: (i) whether the trial court erred in instructing the jury that defendant has the burden of proving mitigating circumstances by a preponderance of the evidence; (ii) whether the trial court erred in instructing the jurors that they could find a nonstatutory mitigating circumstance only if the jurors found both that the circumstance existed based on the evidence presented and that the circumstance possessed mitigating value; (iii) whether the trial

**STATE v. PETERSON**

[350 N.C. 518 (1999)]

court erred in instructing the jurors in accordance with the pattern jury instructions that they "may" consider the mitigating circumstances found when balancing the mitigating and aggravating circumstances in Issue III and in determining the substantiality of the aggravating circumstances in Issue IV; (iv) whether the instructions on Issue III that the jurors could proceed to Issue IV if they determined in Issue III that the mitigating circumstances were insufficient to "outweigh" the aggravating circumstances constituted error; (v) whether the trial court erred by submitting the (e)(6), pecuniary gain, aggravator in a case in which the evidence does not show that defendant was hired or paid to commit the murder; and (vi) whether the death penalty statute is unconstitutionally vague and overbroad, imposed in a discretionary and discriminatory manner, imposed on the basis of arbitrary and capricious factors, and imposed without proper guidance.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY

**[12]** Finally, defendant argues that the sentence of death in this case was imposed under the influence of passion, prejudice, or other arbitrary considerations and that, based on the totality of the circumstances, the death penalty is disproportionate. We are required by N.C.G.S. § 15A-2000(d)(2) to review the record and determine (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *State v. McCollum*, 334 N.C. 208, 239, 433 S.E.2d 144, 161 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

After a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we are convinced that the jury's findings of the two aggravating circumstances were supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

**[13]** Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *State v. Robinson,* 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied,* 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden,* 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield,* 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied,* 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). Our consideration is limited to those cases within the pool which are roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *State v. Syriani,* 333 N.C. 350, 400, 428 S.E.2d 118, 146, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Green,* 336 N.C. at 198, 443 S.E.2d at 47.

Defendant pled guilty to first-degree murder based on premeditation and deliberation. Defendant also pled guilty to the charge of robbery with a dangerous weapon. The jury found both the submitted aggravating circumstances: (i) that defendant had previously been convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); and (ii) that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6).

Three statutory mitigating circumstances were submitted for the jury's consideration: (i) defendant has no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (ii) defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, N.C.G.S. § 15A-2000(f)(6); and (iii) the catchall mitigating circumstance that there existed any other circumstance arising from the evidence which the jury deemed to have mitigating value, N.C.G.S. § 15A-2000(f)(9). The jury found none of the statutory mitigators. Of the twelve nonstatutory mitigating circumstances submitted, no juror found that any existed and had mitigating value.

We begin our analysis by comparing this case to those cases in which this Court has determined the sentence of death to be disproportionate. This Court has determined the death sentence to be dis-

proportionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is not substantially similar to any of the cases in which this Court has found that the death sentence was disproportionate. Defendant notes that *Benson* involved a defendant who entered a plea of guilty and acknowledged his wrongdoing before the jury. 323 N.C. at 328, 372 S.E.2d at 522-23. But that case is clearly distinguishable. In *Benson* the defendant pled guilty solely upon the felony murder theory; and the case involved only one aggravating circumstance, pecuniary gain, N.C.G.S. § 15A-2000(e)(6). *Id.* The jury in *Benson* also found several mitigating circumstances. *Id.* In *Benson*, the defendant robbed a store manager of money as the manager was making a deposit at the bank; the defendant fired a shotgun, hitting the victim in the upper part of the legs, then took the money the victim had been carrying and ran. *Id.* at 320-21, 372 S.E.2d at 518. In contrast to *Benson*, the present case involves a guilty plea to first-degree murder on the theory of premeditation and deliberation; and the jury found two aggravators and specifically declined to find any mitigating circumstances, including the circumstance that defendant voluntarily, and in writing, "acknowledged wrongdoing" in connection with the offenses.

In none of the cases in which the death penalty was found to be disproportionate has the jury found the (e)(3) aggravating circumstance. *State v. Lyons*, 343 N.C. 1, 27-28, 468 S.E.2d 204, 217, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996). "The jury's finding of the prior conviction of a violent felony aggravating circumstance is significant in finding a death sentence proportionate." *Id.* at 27, 468 S.E.2d at 217. Moreover, the facts reveal that defendant, using an assault rifle, gunned down a totally defenseless elderly woman after she had already given him all the money from the cash register in the family run grocery store.

We also consider cases in which this Court has found the death penalty to be proportionate. Although we review all the cases in the pool of similar cases when engaging in this statutory duty, as we have repeatedly stated, "We will not undertake to discuss or cite all of

STATE ex rel. COMM'R OF INS. v. N.C. RATE BUREAU

[350 N.C. 539 (1999)]

those cases each time we carry out that duty." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. We conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

Accordingly, we conclude that defendant received a fair sentencing proceeding, free from prejudicial error, and that the sentence of death ordered by the trial court upon the jury's recommendation is not disproportionate.

NO ERROR.