STATE OF NORTH CAROLINA v. JEFFREY KARL MEYER

No. 379A95-2

(Filed 21 December 2000)

**1. Sentencing— capital—mitigating circumstance—age of defendant—evidence not sufficient**

The trial court did not err in a capital sentencing proceeding by not submitting the mitigating circumstance for the age of the defendant, N.C.G.S. § 15A-2000(f)(7), where defendant was twenty years old at the time he committed the crimes, in honors

English and history classes in high school and a voracious reader, had completed his general equivalency diploma, served in the military, and did well in quartermaster school. Defendant presented evidence of emotional immaturity but not of mental impairment, and, based on his chronological age, his apparently normal physical and intellectual development, and his level of experience, the evidence did not reasonably support nor require the court to submit this circumstance.

## 2. Homicide— first-degree murder—short-form indictment

The North Carolina short-form indictment for first-degree murder is constitutional.

## 3. Homicide— first-degree murder—guilty plea—finding of premeditation and deliberation—surplusage

A trial court "finding" of premeditation and deliberation constituted unnecessary surplusage where defendant pled guilty to two first-degree murders; a plea of guilty means, nothing else appearing, that defendant is guilty upon any and all theories available to the State.

## 4. Sentencing— capital—codefendant's sentence—irrelevant

The trial court did not err in a capital sentencing proceeding by not admitting evidence of a codefendant's life sentences and not submitting the nonstatutory mitigating circumstance that defendant's codefendant received life sentences. A codefendant's sentence for the same murder is irrelevant in sentencing proceedings; the accomplices' punishment is not an aspect of defendant's character or record nor a mitigating circumstance of the particular offense.

## 5. Sentencing— capital—jury selection—personal views on death penalty—instruction

The trial court did not err during jury selection or in the jury charge in a capital sentencing proceeding by not giving defendant's requested instructions that it was permissible for the jurors' personal views concerning the death penalty to influence their sentencing decision. The requested instructions were not a correct statement of the law; moreover, the trial court properly instructed the jury.

**6. Sentencing— capital—aggravating circumstance applying to each of two counts—instruction**

The trial court did not err in a capital sentencing proceeding for two murders in its instruction on the especially heinous, atrocious, or cruel aggravating circumstance, N.C.G.S. § 15A-2000(e)(9), that the circumstance "applies equally to both murders." Although defendant contended that a rational juror could interpret the instruction to indicate that the trial court believed the aggravating circumstance existed and should be given equal weight in each case, the trial court was merely reiterating its previous admonition that the law as to both murder counts was generally the same since the jury would be considering the same aggravating and mitigating circumstances. Viewed contextually, the challenged instruction did not mislead the jury.

**7. Sentencing— capital—nonstatutory mitigating circumstance—depression**

The trial court did not err during a capital sentencing proceeding by failing to submit defendant's requested nonstatutory mitigating circumstance that he was depressed after he returned from military service in Korea. Defendant requested and the trial court allowed the mitigating circumstance that defendant "has suffered from emotional problems," the trial court determined that the proposed circumstance was subsumed in the mitigating circumstance allowed, the jury heard and considered testimony about defendant's unhappiness after he returned from overseas and his attempted suicide, and the court submitted the catchall mitigating circumstance.

**8. Jury— selection—capital sentencing—whether juror could impose life sentence—redundant—court's discretion**

The trial court did not abuse its discretion in a capital sentencing proceeding by refusing to allow defense counsel to ask a prospective juror whether he could consider imposing a life sentence after being informed that defendant was guilty of two homicides. Assuming that defendant's stake-out question was permissible, the court still had discretion to disallow the question; this question was redundant and superfluous because the prospective juror had already clearly indicated his ability and intention to perform his legal duties as a juror, including recommending the sentence required by law under the facts of this case.

**9. Jury— selection—capital sentencing—residual mitigation**

The trial court did not abuse its discretion in a capital sentencing proceeding by preventing defendant from asking a prospective juror whether he could consider residual mitigation under the catchall circumstance, N.C.G.S. § 15A-2000(f)(9), where the prospective juror had indicated that he could follow the law as instructed by the trial court and the court's instruction on the catchall mitigating circumstance after the evidence was heard was proper.

**10. Appeal and Error— preservation of issues—failure to object**

The defendant in a capital sentencing proceeding failed to preserve for appellate review the question of whether the trial court erred by reassigning a prospective juror to a later panel where defendant never objected at trial, never complied with N.C.G.S. § 15A-1211(c), and expressly approved the reassignment of the prospective juror.

**11. Criminal Law— prosecutor's argument—capital sentencing—outside record—defendant's guilt not in issue—comment minor in context of entire record**

There was no error so grossly improper that the trial court erred by not intervening ex mero motu in a capital sentencing proceeding where the prosecutor's argument that the blood of both victims was found on defendant's clothing was not wholly supported by the record. Defendant's guilt was not at issue in this proceeding and the comment was minor in the context of the prosecutor's entire closing statement.

**12. Sentencing— capital—aggravating circumstance—especially heinous, atrocious, or cruel—not unconstitutionally vague**

The especially heinous, atrocious, or cruel aggravating circumstance is not unconstitutionally vague. N.C.G.S. § 15A-2000(e)(9).

**13. Sentencing— capital—aggravating circumstance—especially heinous, atrocious, or cruel—sufficiency of evidence**

The trial court did not err in a capital sentencing proceeding by submitting the especially heinous, atrocious, or cruel aggravating circumstance where defendant argued that the jury was permitted to vicariously apply the circumstance based on the

STATE v. MEYER

[353 N.C. 92 (2000)]

conduct of his accomplice but, considered in the light most favorable to the State, there was sufficient evidence from which the jury could conclude that defendant personally participated in the killing of both victims, defendant pled guilty to both first-degree murders, and defendant does not dispute that the manner in which both victims were murdered is sufficient to warrant this circumstance. N.C.G.S. § 15A-2000(e)(9).

**14. Sentencing— capital—death sentence not arbitrary**

The evidence fully supported the aggravating circumstances found by the jury in a capital sentencing proceeding and there was no indication that the two death sentences were imposed under the influence of passion, prejudice, or any other arbitrary factor.

**15. Sentencing— capital—death penalty—not disproportionate**

Death sentences for two first degree-murders were not disproportionate where defendant was convicted of two counts of first-degree murder; the three aggravating circumstances found by the jury are among the four which have been found sufficient to support a death sentence standing alone; although an accomplice received a sentence of life imprisonment, defendant pled guilty to two counts of first-degree murder, admitting guilt on any and all theories available to the State, including premeditation and deliberation and felony murder; these murders were found to be part of a course of conduct which included crimes of violence against another person, and the victims were killed in their home; and, based on the brutal nature of the crimes, these cases are more similar to cases in which the sentence of death was found proportionate than to those in which it was found disproportionate.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from two judgments on 3 February 1999 imposing sentences of death entered by Jenkins, J., at a resentencing proceeding held in Superior Court, Cumberland County, upon defendant's convictions of first-degree murder. Heard in the Supreme Court 12 September 2000.

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*Janine Crawley Fodor for defendant-appellant.*

WAINWRIGHT, Justice.

On 2 February 1987, Jeffrey Karl Meyer was indicted for two counts of first-degree murder, one count of first-degree burglary, and two counts of robbery with a dangerous weapon. On 12 May 1988, defendant pled guilty to the robbery and burglary charges, and on 16 May 1988, defendant pled guilty to the first-degree murder charges. The trial court entered judgments in the noncapital cases, sentencing defendant to life imprisonment for first-degree burglary and to two consecutive terms of forty years' imprisonment for the two counts of robbery with a dangerous weapon.

During his first capital sentencing proceeding that began on 3 June 1988, defendant escaped from custody, forcing the trial court to declare a mistrial. *See State v. Meyer*, 330 N.C. 738, 740, 412 S.E.2d 339, 340 (1992) (*Meyer I*). Following a capital sentencing proceeding that began on 24 October 1988, the jury recommended sentences of death for the two first-degree murders, and the trial court entered judgments in accordance with that recommendation. *See id.* at 740, 412 S.E.2d at 341. On appeal, this Court vacated the judgments and remanded for a new capital sentencing proceeding pursuant to *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *Meyer I*, 330 N.C. 738, 412 S.E.2d 339.

On 31 August 1995, following another capital sentencing proceeding, another jury recommended sentences of death for the two counts of first-degree murder, and the trial court entered judgments in accordance with those recommendations. *State v. Meyer*, 345 N.C. 619, 620, 481 S.E.2d 649, 650 (1997) (*Meyer II*). On appeal, this Court vacated the judgments and remanded for resentencing because defendant was absent from an unrecorded, in-chambers conference involving the trial judge, defense counsel, and counsel for the State. *Id.* at 623, 481 S.E.2d at 651-52.

On 3 February 1999, following yet another capital sentencing proceeding, another jury once again recommended sentences of death for the two first-degree murders, and the trial court entered judgments in accordance with those recommendations. Defendant appeals his sentences to this Court.

The State's evidence at defendant's capital sentencing proceeding tended to show the following: In December 1986, defendant and Mark Thompson were soldiers on active duty and stationed at Fort Bragg. Defendant and Thompson began watching a residence owned by an

elderly couple, planning to burglarize the couple's home. Based on their surveillance efforts, defendant and Thompson knew that Paul and Janie Kutz (the victims) were an "elder couple" who owned two vehicles but "usually traveled" together in the same car.

On 1 December 1986, defendant and Thompson, dressed in "ninja" suits, broke into the victims' home in Fayetteville, North Carolina. Surprised by Mr. Kutz, defendant shot him with a blow gun (a martial arts weapon that launches sharp darts from a hollow tube). When Mr. Kutz continued to advance, defendant stabbed and killed him with a butterfly knife. Defendant and Thompson also stabbed and killed Mrs. Kutz with butterfly knives. Thereafter, defendant and Thompson stole jewelry, credit cards, and a television from the Kutz residence.

During the early morning hours of 2 December 1986, military police officer Robert Provalenko intercepted defendant and Thompson as they traveled in a red pickup truck through a restricted area of Fort Bragg. Officer Provalenko observed that defendant and Thompson were dressed in black pants and ninja boots. When Officer Provalenko noticed a black-handled butterfly knife in the glove compartment of the truck, directly in front of defendant, he asked defendant and Thompson to exit the vehicle. Thompson then consented to a search of his vehicle. During the ensuing search, Officer Provalenko and military police officer George Clark found a second butterfly knife, a pair of nunchucks, a blowgun, and latex rubber gloves. The officers also found jewelry, a television, and credit cards, all of which were later identified as belonging to the victims.

Later that morning, following a report from the military police about credit cards seized from defendant and Thompson, Cumberland County Deputy Sheriff David Stewart was dispatched to respond to a possible break-in at the victims' residence. Upon arriving at the victims' residence, Deputy Stewart observed signs of a break-in, including an open window and door. After entering the victims' residence, Deputy Stewart discovered the victims' stabbed bodies. Deputy Stewart found Mr. Kutz's body lying in a recliner in the den and discovered Mrs. Kutz's body lying on a bed in the master bedroom. John Trogdon, a crime-scene technician with the Fayetteville Police Department, examined the victims' residence and observed footprints consistent with ninja boots in the dirt around the house, as well as on a dining room chair. State Bureau of Investigation (SBI) Agent Lucy Milks, an expert in forensic serology, tested various evidence seized from the victims' residence. Among other things, Agent

Milks determined that human blood consistent with the type of both victims was present on the black-handled butterfly knife. A test conducted on the chrome butterfly knife revealed the presence of human blood consistent with the type of Mrs. Kutz.

SBI agent John Bendure, an expert in fiber analysis and comparison, testified that his testing of the black-handled butterfly knife revealed the presence of light-brown polyester fiber that was consistent with the upholstery of the chair in which Mr. Kutz's body was found. Agent Bendure also tested the chrome butterfly knife and associated fiber samples from that knife with a blue blanket found with Mrs. Kutz's body. In addition, Agent Bendure testified that fibers from the pink nightgown worn by Mrs. Kutz at the time of her death could be associated with both knives. Finally, Agent Bendure testified that fibers associated with the blanket and sheets in the bedroom were found on the clothing worn by both defendant and Thompson.

On 3 December 1986, Dale Wayne Wyatt, then a soldier stationed at Fort Bragg, was detained in the Cumberland County jail waiting to appear in court on a worthless-check charge. Wyatt testified at trial that he met defendant in one of the holding facilities during his detention. According to Wyatt, defendant told him that "he was being investigated in a double homicide" and that his clothes were being held as evidence. Wyatt testified that defendant told him about the murder of Mr. Kutz. Defendant told Wyatt that when he entered the Kutz residence, he saw Mr. Kutz, shot him with a blowgun dart, then stabbed him with a butterfly knife.

Forensic pathologist Dr. George Lutman performed an autopsy on the sixty-two-year-old body of Mrs. Kutz. In Dr. Lutman's expert opinion, Mrs. Kutz's death was caused by multiple stab wounds. Dr. Lutman testified that Mrs. Kutz had been stabbed or cut approximately twenty-five or twenty-six times. Four stab wounds penetrated into the right side of Mrs. Kutz's chest, and another penetrated into the left side. Mrs. Kutz also suffered multiple wounds to the liver, a stab wound into her neck that reached to the spinal column, a stab wound that cut the tip of her spleen, and a stab wound that cut one of the tubes from the kidney to the bladder. Dr. Lutman also noted "defensive wounds" to Mrs. Kutz's hands, indicating an attempt to fend off an attacker. The most critical wound was located near Mrs. Kutz's right shoulder, where a knife "tunneled up" and severed her windpipe and her carotid artery, causing Mrs. Kutz to aspirate blood into her lungs when she inhaled. Dr. Lutman observed that Mrs.

Kutz's "lungs were markedly expanded with . . . trapped air and blood." This aspiration indicated to Dr. Lutman that Mrs. Kutz had remained alive "for some period of time after receiving the wound."

Forensic pathologist Dr. Fred Ginn performed an autopsy on the sixty-eight-year-old body of Mr. Kutz. Dr. Ginn testified that wounds to the front of Mr. Kutz's body included a stab wound above the left eye, a stab wound above the right collar bone down in his neck, a "large gaping wound across the neck," two stab wounds in the upper left chest, and an "oval shaped stab wound . . . in the sixth rib space." Dr. Ginn also noted defensive wounds on Mr. Kutz's left hand and, on Mr. Kutz's left shoulder, "a small punctate mark of the size that would be made by a needle or dart." Dr. Ginn further testified that wounds to the back of Mr. Kutz's body included a cut above the left elbow; three stab wounds into the left side of the chest and one into the right side of the chest; and stab wounds to the left and right of the spine, with the left wound extending into the left kidney. A wound to the chest and left ventricle of Mr. Kutz's heart caused 150 milliliters of blood from the heart to collect between the heart wall and the connective tissue sac that encases the heart. Dr. Ginn opined that the probable cause of death was the stab wound to the heart. Dr. Ginn also testified that "between half a minute to five minutes could have elapsed before" Mr. Kutz died from the effects of the stab wounds and that Mr. Kutz "could have been conscious any of that time up to the maximum."

[1] By assignment of error, defendant contends the trial court erred by failing to submit to the jury the (f)(7) mitigating circumstance, "[t]he age of the defendant at the time of the crime." N.C.G.S. § 15A-2000(f)(7) (1999). Although defendant did not request submission of the (f)(7) mitigating circumstance, he now contends the trial court should have submitted the circumstance on its own motion. We disagree.

This Court has characterized "age" as a "flexible and relative concept." *State v. Johnson*, 317 N.C. 343, 393, 346 S.E.2d 596, 624 (1986); *accord State v. Spruill*, 338 N.C. 612, 660, 452 S.E.2d 279, 305 (1994), *cert. denied*, 516 U.S. 834, 133 L. Ed. 2d 63 (1995). We have recognized that chronological age is not the determinative factor with regard to submission of the (f)(7) mitigating circumstance. *See State v. Peterson*, 350 N.C. 518, 528, 516 S.E.2d 131, 138 (1999), *cert. denied,——* U.S. ——, 145 L. Ed. 2d 1087 (2000); *State v. Bowie*, 340 N.C. 199, 203, 456 S.E.2d 771, 773, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 435 (1995). Rather, the trial court must consider other "vary-

ing conditions and circumstances." *Peterson*, 350 N.C. at 528, 516 S.E.2d at 138; *accord State v. Gregory*, 340 N.C. 365, 422, 459 S.E.2d 638, 671 (1995), *cert. denied*, 517 U.S. 1108, 134 L. Ed. 2d 478 (1996).

In the instant case, defendant was twenty years old at the time he committed the crimes. During defendant's capital sentencing proceeding, he presented evidence through several lay witnesses regarding his emotional immaturity, but no evidence whatsoever of mental impairment. Although evidence showing emotional immaturity is relevant to submission of the (f)(7) mitigating circumstance, "this Court will not conclude that the trial court erred in failing to submit the age mitigator *ex mero motu* where evidence of defendant's emotional immaturity is counterbalanced by other factors such as defendant's chronological age, defendant's apparently normal intellectual and physical development, and defendant's lifetime experience." *State v. Steen*, 352 N.C. 227, 257, 536 S.E.2d 1, 19 (2000); *accord Spruill*, 338 N.C. at 660, 452 S.E.2d at 305; *Johnson*, 317 N.C. at 393, 346 S.E.2d at 624.

The evidence here showed that defendant "was of normal intelligence," that he was in honors English and history classes in high school, that he was a "voracious" reader, that he completed his General Equivalency Diploma, and that he served in the military and did well in quartermaster school. Based on defendant's chronological age of twenty, his apparently normal physical and intellectual development, and his level of experience, we conclude the evidence does not reasonably support the submission of, nor does it require the trial court to submit, the (f)(7) mitigating circumstance. This assignment of error is overruled.

[2],[3] By assignments of error, defendant argues his pleas of guilty to first-degree murder must be vacated because the indictments charging defendant with first-degree murder were constitutionally deficient. Specifically, defendant contends the short-form indictments were improper because they did not allege the elements of premeditation and deliberation in first-degree murder. Defendant also argues the trial court made an improper judicial "finding" that "upon the evidence produced . . . [today] by the State of North Carolina, . . . there is substantial evidence as to the elements of premeditation and deliberation, and that for the purpose of the plea adjudication they were proven beyond a reasonable doubt."

With regard to defendant's short-form indictment argument, this Court has recently addressed this issue in *State v. Braxton*, 352 N.C.

158, 531 S.E.2d 428 (2000), and defendant has presented no basis for this Court to revisit the issue in the present case. As for the trial court's judicial "finding" of premeditation and deliberation in this case, we have held that

> [a] defendant, nothing else appearing, pleads guilty to a charge contained in a bill of indictment[,] not to a particular legal theory by which that charge may be proved. His plea waives his right to put the state to its proof. It obviates the necessity for the state's invocation of some particular legal theory upon which to convict defendant. The question of which theory, if there is more than one available, upon which defendant might be guilty does not arise. His plea of guilty means, nothing else appearing, that he is guilty upon any and all theories available to the state.

*State v. Silhan*, 302 N.C. 223, 263, 275 S.E.2d 450, 478 (1981), *over-ruled on other grounds by State v. Sanderson*, 346 N.C. 669, 488 S.E.2d 133 (1997). Because defendant pled guilty to two first-degree murders in the instant case, the trial court's subsequent "finding" of premeditation and deliberation constitutes unnecessary surplusage. These assignments of error are overruled.

[4] By assignments of error, defendant contends the trial court erred by failing to admit evidence of codefendant Thompson's life sentences and by declining to submit to the jury the nonstatutory mitigating circumstance that defendant's codefendant received life sentences. We disagree.

This Court has repeatedly held that a codefendant's sentence for the same murder is irrelevant in the sentencing proceedings. *See, e.g., State v. Smith*, 352 N.C. 531, 563, 532 S.E.2d 773, 793 (2000); *State v. Sidden*, 347 N.C. 218, 231, 491 S.E.2d 225, 232 (1997), *cert. denied*, 523 U.S. 1097, 140 L. Ed. 2d 797 (1998). We have stated that a code-fendant's lesser sentence " 'does not reduce the moral culpability of the killing [or] make it less deserving of the penalty of death than other first-degree murders. The accomplices' punishment is not an aspect of the defendant's character or record nor a mitigating circumstance of the particular offense.' " *Smith*, 352 N.C. at 563, 532 S.E.2d at 793 (quoting *State v. Williams*, 305 N.C. 656, 687, 292 S.E.2d 243, 261-62 (citations omitted), *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982)).

Nonetheless, defendant contends that in *State v. Roseboro*, 351 N.C. 536, 528 S.E.2d 1, *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 498

**STATE v. MEYER**

[353 N.C. 92 (2000)]

(2000) this Court acknowledged the relevance of evidence pertaining to a codefendant's sentence. Contrary to defendant's argument, however, this Court in *Roseboro* reaffirmed that "[e]vidence of a codefendant's sentence is not relevant to a defendant's character or record or to the circumstances of the killing; hence such evidence is not relevant to show a mitigating circumstance." *Id.* at 546, 528 S.E.2d at 8. Therefore, defendant's argument is without merit. These assignments of error are overruled.

[5] By assignments of error, defendant contends the trial court committed error by failing to instruct the jury that it was permissible for the jurors' personal views concerning the death penalty to influence their approach to the sentencing decision. We disagree.

Prior to trial, defendant asked the trial court to give prospective jurors special preselection instructions that explained the sentencing process. The requested instruction at issue reads in pertinent part as follows:

> If you are selected as a juror, it will be your duty to consider all the evidence presented and follow the instructions of the Court. If the jury unanimously finds the existence of an aggravating circumstance, it will be your duty to consider both Life Imprisonment and the Death Penalty, *regardless of your personal views concerning capital punishment. However, you should know that it is acceptable for jurors to have different views about what circumstances call for the death penalty, and to use their personal views in deciding whether the mitigating circumstances outweigh the aggravating circumstances or when deciding whether the aggravating circumstances, when considered with any mitigating circumstances, are sufficiently substantial to call for the death penalty.* You are not required to return a verdict of death in any given case; you are required to consider the evidence fairly, and to follow the instructions of the Court in deciding the appropriate punishment.

(Emphasis added.) The trial court declined to give the emphasized portion of defendant's requested instruction, explaining that the instruction was not a proper statement of law. The trial court stated that "[t]he correct statement is that [the jurors] are to follow the law as the Court gives it to them and not as they think it is or might like it to be."

STATE v. MEYER

[353 N.C. 92 (2000)]

At the conclusion of the sentencing proceeding, during the charge conference, defendant requested the following similar instruction:

Each of you has expressed varying views about the circumstances under which you might feel that the punishment of death should be imposed. You were selected to serve on this jury because of and not in spite of those differences. When determining those matters in the course of your deliberations which call for you to make subjective judgments, you are expected, indeed required, to bring your personal views into play.

The trial court denied defendant's requested instruction.

Defendant contends the trial court erred by declining to submit both the preselection instruction and the charge conference instruction. Defendant argues that both instructions were correct statements of law and, therefore, should have been submitted by the trial court.

Regarding defendant's preselection instruction, the trial court "has the duty 'to supervise the examination of prospective jurors and to decide all questions relating to their competency.' " *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980) (quoting *State v. Young*, 287 N.C. 377, 387, 214 S.E.2d 763, 771 (1975), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976)). Moreover, we have repeatedly held that the trial court has "broad discretion to see that a competent, fair and impartial jury is impaneled[,] and rulings of the trial judge in this regard will not be reversed absent a showing of abuse of discretion." *State v. Johnson*, 298 N.C. 355, 362, 259 S.E.2d 752, 757 (1979), *quoted in State v. Ward*, 338 N.C. 64, 89, 449 S.E.2d 709, 722 (1994), *cert. denied*, 514 U.S. 1134, 131 L. Ed. 2d 1013 (1995).

In the instant case, the trial court correctly determined that defendant's proposed instruction misstated the law concerning the duty of a juror in a capital case. Moreover, the trial court properly instructed the jury to "consider the evidence fairly and to follow [its] instructions . . . in deciding the appropriate punishment." *See State v. Sokolowski*, 351 N.C. 137, 148, 522 S.E.2d 65, 72 (1999); *State v. Jaynes*, 342 N.C. 249, 270, 464 S.E.2d 448, 461 (1995), *cert. denied*, 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996). Therefore, the trial court did not err in declining to give the instruction requested by defendant.

STATE v. MEYER

[353 N.C. 92 (2000)]

We likewise find no error in the trial court's denial of defendant's requested instruction during the charge conference. When a defendant requests an instruction that is supported by the evidence and is a correct statement of law, the trial court must give the instruction in substance. *See State v. Garner*, 340 N.C. 573, 594, 459 S.E.2d 718, 729 (1995), *cert. denied*, 516 U.S. 1129, 133 L. Ed. 2d 872 (1996); *State v. Hill*, 331 N.C. 387, 420, 417 S.E.2d 765, 782 (1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993). In the instant case, however, the requested instruction, like the preselection instruction requested by defendant, is not a correct statement of law. Rather, the instruction would serve only to confuse jurors regarding their duties in a capital case by inviting personal views to trump the rule of law. During its charge to the jury, the trial court correctly instructed the jury in accordance with the pattern jury instructions that "it is absolutely necessary that you understand and apply the law as I give it to you and not as you think it is or might like it to be." *See* N.C.P.I.—Crim. 150.10 (2000). Therefore, defendant's argument is without merit. These assignments of error are overruled.

[6] By assignment of error, defendant contends the trial court committed reversible error by expressing an opinion on the existence of and weight to be given to the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that "the murders were especially heinous, atrocious, or cruel." We disagree.

The trial court instructed the jury on the (e)(9) aggravating circumstance as follows:

> Now, the third alleged aggravating circumstance on the form concerns the murder of each victim—concerning the murder of each victim is as follows: Was this murder especially heinous, atrocious or cruel. Now, members of the jury, you must understand that this alleged circumstance or aggravating circumstance applies equally to both murders and you will consider this aggravating circumstance in making your recommendation as to punishment in each case.

Defendant contends the above instruction to the jury could be interpreted by a rational juror to indicate that the trial court believed the (e)(9) aggravating circumstance existed and should be given equal weight in each case. Defendant also argues that he was prejudiced by the trial court's instruction because the jury found the (e)(9) aggravating circumstance in each case.

STATE v. MEYER

[353 N.C. 92 (2000)]

N.C.G.S. §§ 15A-1222 and 15A-1232 prohibit the trial court from expressing an opinion in the presence of the jury on any question of fact to be decided by the jury. N.C.G.S. §§ 15A-1222, 15A-1232 (1999); *see also State v. York*, 347 N.C. 79, 92, 489 S.E.2d 380, 387-88 (1997). " 'In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized.' " *State v. Jones*, 347 N.C. 193, 207, 491 S.E.2d 641, 649 (1997) (quoting *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995)). This Court has also held that

> " '[t]he charge of the court must be read as a whole . . . , in the same connected way that the judge is supposed to have intended it and the jury to have considered it . . . .' *State v. Wilson*, 176 N.C. 751, [754-55,] 97 S.E. 496[, 497] (1918). It will be construed contextually, and isolated portions will not be held prejudicial when the charge as [a] whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal."

*State v. Rich*, 351 N.C. 386, 393-94, 527 S.E.2d 299, 303 (2000) (quoting *State v. Lee*, 277 N.C. 205, 214, 176 S.E.2d 765, 770 (1970) (alterations in original) (citations omitted)). Finally, we have stated that the trial court's words " 'may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred.' " *State v. Chandler*, 342 N.C. 742, 752, 467 S.E.2d 636, 641 (quoting *State v. McWilliams*, 277 N.C. 680, 685, 178 S.E.2d 476, 479 (1971)), *cert. denied*, 519 U.S. 875, 136 L. Ed. 2d 133 (1996).

Applying the foregoing principles to the present case, we hold that, based on the totality of circumstances, the trial court's charge did not constitute an impermissible expression of opinion on the evidence. At the outset, we note that the trial court characterized the (e)(9) aggravating circumstance as the "third *alleged* aggravating circumstance." (Emphasis added.) Moreover, the record reveals the trial court explained to the jury at the beginning of its charge that the jury must (1) consider and make recommendations as to each count of murder, (2) consider all of the evidence as it related to each count of murder, and (3) apply the trial court's instructions on the law to each count of murder. Further, the trial court instructed the jury as follows:

As you are well aware, there are two offenses of first degree murder to which the defendant has pled guilty. And you, of course, must consider and make recommendations as to each of the counts or each of the cases.

When I say two counts, one is for the murder of Mr. Kutz and one is for the murder of Mrs. Kutz. I will use these terms—use the terms cases and counts interchangeably during some of these instructions.

Now, it will be your duty in your deliberations to consider each of these two counts separately and to make separate recommendations on each of the two cases to which the defendant has pled guilty. This means you must consider each count separately during your deliberations, find the facts separately, apply the law separately and make a separate sentencing recommendation as to each of the counts of murder in the first degree.

. . . .

Now, in your deliberations, you are to consider all of the evidence as it relates to each case. You may consider the same evidence as to both counts if you find it to be applicable. The law as to both of the counts is generally the same since you will be considering the same aggravating and mitigating circumstances.

The above instructions reveal that, by instructing the jury that the (e)(9) aggravating circumstance "applies equally to both murders," the trial court merely reiterated its previous admonition that "the law as to both of the counts is generally the same since you will be considering the same aggravating and mitigating circumstances." Viewed contextually, the challenged instruction did not mislead the jury on the existence of the (e)(9) aggravating circumstance in each case. Therefore, this assignment of error is overruled.

[7] By assignment of error, defendant contends the trial court erroneously failed to submit defendant's requested nonstatutory mitigating circumstance that he was depressed after he returned from military service in Korea. Defendant requested and the trial court allowed the mitigating circumstance that defendant "has suffered from emotional problems." The trial court then determined that the proposed circumstance concerning his depression after returning from Korea was subsumed in the mitigating circumstance that defendant had suffered from emotional problems. Defendant's argument is based on the belief that the jury would have given more value

to two separate mitigating circumstances and that the circumstance given was overly broad. We disagree.

A jury in a capital case must "not be precluded from considering as a mitigating factor[] any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990 (1978), *quoted in State v. White*, 349 N.C. 535, 566, 508 S.E.2d 253, 272-73 (1998), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). However, we have continually refused to follow a "mechanical, mathematical approach to capital sentencing." *State v. Bond*, 345 N.C. 1, 30, 478 S.E.2d 163, 178 (1996), *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997); *accord State v. Greene*, 324 N.C. 1, 21, 376 S.E.2d 430, 442 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990). Moreover, we have held that trial courts may combine redundant mitigating circumstances. *State v. Frye*, 341 N.C. 470, 504, 461 S.E.2d 664, 682 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996). This Court has also found harmless error where a proposed nonstatutory mitigating circumstance was subsumed within another nonstatutory mitigating circumstance. *See Bond*, 345 N.C. at 30, 478 S.E.2d at 178.

In the instant case, the trial court determined that the proposed circumstance concerning defendant's depression after returning from overseas was subsumed in the mitigating circumstance that defendant had suffered from emotional problems. Moreover, the jury was not precluded from considering evidence of defendant's depression as a mitigating circumstance. *See Greene*, 324 N.C. at 20, 376 S.E.2d at 442. The jury heard and considered testimony from defendant's family and friends about his unhappiness after he returned from overseas and about his attempted suicide. In addition, the court submitted the N.C.G.S. § 15A-2000(f)(9) catchall mitigating circumstance, which permitted the jury to consider "[a]ny other circumstance arising from the evidence which the jury deems to have mitigating value." N.C.G.S. § 15A-2000(f)(9); *see also Greene*, 324 N.C. at 21, 376 S.E.2d at 442. Therefore, the trial court's refusal to submit the requested nonstatutory mitigating circumstance was not error. This assignment of error is overruled.

**[8]** By assignment of error, defendant contends the trial court erred by refusing to allow defense counsel to ask prospective juror Robert West, as well as other prospective jurors, whether he could consider

imposing a life sentence after he had been informed that defendant was guilty of committing two homicides. We disagree.

The trial court has broad discretion in ensuring that "a competent, fair, and impartial jury is impaneled." *State v. Conaway*, 339 N.C. 487, 508, 453 S.E.2d 824, 837-38, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). In reviewing a trial court's rulings on *voir dire* questions, this Court has stated that

> while counsel may diligently inquire into a juror's fitness to serve, the extent and manner of that inquiry rests within the trial court's discretion. Moreover, in order to establish reversible error, a defendant must show prejudice in addition to a clear abuse of discretion on the part of the trial court.

*State v. Parks*, 324 N.C. 420, 423, 378 S.E.2d 785, 787 (1989) (citation omitted). Both defendant and the State have the right to question prospective jurors about their views on capital punishment. *See State v. Wilson*, 313 N.C. 516, 526, 330 S.E.2d 450, 458 (1985). However, the extent and the manner of such inquiry rests within the trial court's discretion. *See Bond*, 345 N.C. at 17, 478 S.E.2d at 171; *State v. Taylor*, 332 N.C. 372, 390, 420 S.E.2d 414, 425 (1992).

In the instant case, the trial court did not abuse its discretion by disallowing defendant's question to prospective jurors. Defense counsel established through a series of questions that prospective juror West: (1) knew that defendant had pled guilty to two murders; (2) could possibly vote for life imprisonment under either theory of first-degree murder, after defense counsel had defined first-degree murder and explained the theories of both felony murder and premeditated and deliberated murder; (3) could possibly vote for the death penalty; (4) could consider, without hesitation, mitigating circumstances; (5) understood the legal requirement that aggravating circumstances must be proven beyond a reasonable doubt; whereas, mitigating circumstances need only be proven by a preponderance of the evidence; (6) was willing to make an individual decision about mitigating circumstances regardless of other jurors' decisions; and (7) would express his views and opinions about the evidence even if they differed from those of other jurors. Notwithstanding prospective juror West's indication that he could perform his legal duties as a juror and recommend either a death sentence or life imprisonment, defendant contends the trial court should have allowed defense counsel's question. Defendant argues that, contrary to the State's contention, the proposed inquiry was not an improper stake-out

question. Assuming, without deciding, that defendant's stake-out question was permissible under these facts, the trial court still had discretion to disallow the question. *See State v. Richmond,* 347 N.C. 412, 425, 495 S.E.2d 677, 683-84, *cert. denied,* 525 U.S. 843, 142 L. Ed. 2d 88 (1998). As we held in *Richmond,* the trial court is not required "to allow any or all *voir dire* questions premised on uncontroverted facts, regardless of their tendency to stake out or indoctrinate jurors." *Id.* at 425, 495 S.E.2d at 684. We also note that defense counsel's proposed question to prospective juror West was redundant and superfluous. Prospective juror West had already clearly indicated his ability and intention to perform his legal duties as a juror, including recommending the sentence required by law under the facts of this case. Therefore, the trial court did not abuse its discretion in disallowing defense counsel's proposed question. This assignment of error is overruled.

[9] By assignment of error, defendant contends the trial court erred by preventing defendant from asking prospective juror James Eubank whether he could consider residual mitigation under the catchall circumstance, which gives the jury an opportunity to consider "any other circumstance arising from the evidence which the jury deems to have mitigating value." N.C.G.S. § 15A-2000(f)(9). We disagree.

As previously noted, "the extent and manner of questioning during jury *voir dire* is within the sound discretion of the trial court," *State v. Richardson,* 346 N.C. 520, 529, 488 S.E.2d 148, 153 (1997), *cert. denied,* 522 U.S. 1056, 239 L. Ed. 2d 652 (1998), and "in order to establish reversible error, a defendant must show prejudice in addition to a clear abuse of discretion on the part of the trial court," *Parks,* 324 N.C. at 423, 378 S.E.2d at 787. During *voir dire,* " '[c]ounsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided.' " *Braxton,* 352 N.C. at 179, 531 S.E.2d at 440 (quoting *Phillips,* 300 N.C. at 682, 268 S.E.2d at 455). Defense counsel's questions must "amount to a proper inquiry into whether the juror could follow the law as instructed by the trial judge." *Id.*; *see also State v. Robinson,* 339 N.C. 263, 273, 451 S.E.2d 196, 202 (1994), *cert. denied,* 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

In the instant case, prospective juror Eubank responded appropriately to questions from defense counsel by stating that he "could listen to and consider mitigating circumstances that [he] had been instructed upon." Moreover, after the evidence was

heard, the trial court properly instructed the jury on the catchall circumstance:

> Now, ladies and gentlemen, we come to possible mitigating factor number eleven. In this possible mitigating factor, you may consider any other circumstance or circumstances arising from the evidence which you deem to have mitigating value. If one or more of you find from a preponderance of the evidence any other mitigating factor and you deem it to have mitigating value, you will have your foreperson so indicate by writing "yes" after this possible mitigating circumstance on the issues and recommendations form. And if you were to find that other mitigating factors existed from the evidence which you deem to have mitigating value, then you would answer number eleven yes.

The trial court's instruction was in accordance with the pattern jury instructions. *See* N.C.P.I.—Crim. 150.10. Because prospective juror Eubank indicated that he could follow the law as instructed by the trial court and the trial court properly instructed the jury regarding the (f)(9) catchall mitigating circumstance, the trial court did not abuse its discretion by disallowing defense counsel's question to prospective juror Eubank. This assignment of error is overruled.

[10] By assignment of error, defendant contends the trial court committed structural error by reassigning prospective juror Kelly Parker to a later panel of prospective jurors. Defendant argues the trial court's action violated N.C.G.S. § 15A-1214 and that the violation entitles defendant to a new sentencing hearing. We disagree.

The North Carolina jury selection statute provides, in pertinent part, as follows:

> (a) The clerk, under the supervision of the presiding judge, must call jurors from the panel by a system of random selection which precludes advance knowledge of the identity of the next juror to be called. When a juror is called and he is assigned to the jury box, he retains the seat assigned until excused.

N.C.G.S. § 15A-1214(a) (1999). In this case, the trial court divided the venire into several panels and seated each panel separately for *voir dire*. Defendant contends that this procedure resulted in advance notice of the identity of the next juror to be called when only one prospective juror remained in each panel. Defendant further argues that, by reassigning prospective juror Parker to another panel rather

than simply excusing her, the trial court destroyed the required randomness of the procedure.

Defendant did not object to the jury selection procedure at trial. However, " '[w]hen a trial court acts contrary to a statutory mandate, the defendant's right to appeal is preserved despite the defendant's failure to object during trial.' " *Braxton*, 352 N.C. at 177, 531 S.E.2d at 439 (quoting *State v. Lawrence*, 352 N.C. 1, 13, 530 S.E.2d 807, 815 (2000)); *see also State v. Jones*, 336 N.C. 490, 497, 445 S.E.2d 23, 26 (1994). In any event, a defendant's challenge to the jury must satisfy N.C.G.S. § 15A-1211, which provides that a challenge:

(1) May be made only on the ground that the jurors were not selected or drawn according to law.

(2) Must be in writing.

(3) Must specify the facts constituting the ground of challenge.

(4) Must be made and decided before any juror is examined.

N.C.G.S. § 15-1211(c) (1999); *see also Braxton*, 352 N.C. at 177, 531 S.E.2d at 439.

In the instant case, defendant never complied with N.C.G.S. § 15A-1211(c). Defendant "never challenged the jury panel selection process and never informed the trial court of any objection to the allegedly improper handling of the jury venires." *Braxton*, 352 N.C. at 177, 531 S.E.2d at 439; *see also State v. Workman*, 344 N.C. 482, 499, 476 S.E.2d 301, 310 (1996). In fact, the following colloquy took place on 20 January 1999:

THE COURT: . . . . The Court has received the following document from the clerk. Its letterhead says Fayetteville Ambulatory Surgery Center, Inc., here in Fayetteville. It's dated 1/20/99. Reads as follows: To whom this may concern, Kelly Parker was at our facility to provide transportation and postoperative care for Roy Parker. Any questions, please feel free to call, and it's signed S. Henley. This juror is one of the jurors on panel three. My suggestion is to have the clerk notify Ms. Parker that she is to report on Monday.

[PROSECUTOR]: I don't have any objection to that, Your Honor.

THE COURT: Just deal with it that way.

[DEFENSE COUNSEL]: Yes, sir. No objection.

THE COURT: It's an ambulatory surgery. That indicates to me that the person is obviously her husband and we can just deal with it—if there's some health problem involving the husband next week, I don't see delaying court or anything this morning.

[DEFENSE COUNSEL]: No, sir.

[PROSECUTOR]: Just defer her until Monday.

THE COURT: Until Monday. Is that agreeable with all parties?

[DEFENSE COUNSEL]: It is, Your Honor.

[PROSECUTOR]: That's agreeable with the [S]tate.

THE COURT: All right. If you could notify her.

THE CLERK: All right.

The transcript demonstrates that not only did defendant never object to the jury selection process, he expressly approved the reassignment of prospective juror Parker. Based on defendant's failure to follow the procedures for jury panel challenges and "his failure to alert the trial court to the challenged improprieties," *Braxton*, 352 N.C. at 177, 531 S.E.2d at 439; *see also State v. Atkins*, 349 N.C. 62, 103, 505 S.E.2d 97, 122 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999), we conclude that defendant failed to preserve this issue for appellate review. This assignment of error is overruled.

**[11]** By assignment of error, defendant contends the trial court erred by allowing the prosecutor to argue, outside of the evidence, that both victims' blood was found on defendant's clothing. We disagree.

Counsel is allowed wide latitude in the argument to the jury, *see Johnson*, 298 N.C. at 368, 259 S.E.2d at 761, and "may argue the facts in evidence and all reasonable inferences therefrom," *State v. Sanderson*, 336 N.C. 1, 15, 442 S.E.2d 33, 42 (1994). The "scope of this latitude lies within the sound discretion of the trial court." *Gregory*, 340 N.C. at 424, 459 S.E.2d at 672. When defendant fails to object during closing argument, as was the case here, "the standard of review is whether the argument was so grossly improper that the trial court erred in failing to intervene *ex mero motu.*" *State v. Blakeney*, 352 N.C. 287, 320, 531 S.E.2d 799, 822 (2000); *accord State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999). "[T]he trial court is not required to intervene *ex mero motu* unless the argument strays so far from the bounds of

propriety as to impede defendant's right to a fair trial." *Atkins*, 349 N.C. at 84, 505 S.E.2d at 111, *quoted in Blakeney*, 352 N.C. at 320, 531 S.E.2d at 822. "[O]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996), *quoted in Blakeney*, 352 N.C. at 320-21, 531 S.E.2d at 822.

In the instant case, the record reveals that Agent Milks examined the black ninja pants that defendant wore on the night of the murders. Agent Milks' examination revealed the presence of human blood on defendant's pants consistent with that of both defendant and Mrs. Kutz. Agent Milks did not discover evidence of Mr. Kutz's blood on defendant's clothing. Therefore, the prosecutor's statement that the victims' blood was found on defendant's clothing is not wholly supported by the record. Nonetheless, the challenged statement was not so "grossly improper" as to require the trial court to intervene *ex mero motu. Blakeney*, 352 N.C. at 322, 531 S.E.2d at 822; *see also State v. Gladden*, 315 N.C. 398, 424, 340 S.E.2d 673, 689 (prosecutor's factual argument, though not supported by the evidence, was not so grossly improper as to warrant *ex mero motu* action by the trial court), *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). In any event, the statement at issue in no way prejudiced defendant. Prior to his capital sentencing proceeding, defendant pled guilty to both murders. Therefore, defendant's guilt was not at issue in this case. Moreover, the challenged comment was minor in the context of the prosecutor's entire closing statement. *See State v. Moseley*, 338 N.C. 1, 50, 449 S.E.2d 412, 442 (1994), *cert. denied*, 514 U.S. 1091, 131 L. Ed. 2d 738 (1995). In short, the prosecutor's comment in no way impeded defendant's right to a fair capital sentencing proceeding. This assignment of error is overruled.

By assignments of error, defendant contends the trial court committed reversible error by submitting the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance, that the murders were "especially heinous, atrocious, or cruel." N.C.G.S. § 15A-2000(e)(9). The jury found the (e)(9) circumstance in each case. Defendant contends new sentencing is required based on two separate grounds: (1) the (e)(9) circumstance is unconstitutionally vague, and (2) submission of the (e)(9) aggravating circumstance was not supported by the evidence. We disagree.

**[12]** This Court has consistently rejected defendant's argument that the (e)(9) aggravating circumstance is unconstitutionally vague, *see State v. Anderson,* 350 N.C. 152, 187, 513 S.E.2d 296, 317, *cert. denied,* 528 U.S. 973, 145 L. Ed. 2d 326 (1999); *State v. Lee,* 335 N.C. 244, 285, 439 S.E.2d 547, 568-69, *cert. denied,* 513 U.S. 891, 130 L. Ed. 2d 162 (1994), and we decline defendant's invitation to reconsider our prior holdings.

**[13]** Defendant further contends the evidence does not support submission of the (e)(9) aggravating circumstance. Defendant does not contest that the murders in this case were especially heinous, atrocious, or cruel. Rather, he argues the jury was improperly permitted to vicariously apply the (e)(9) aggravating circumstance based on the conduct of his accomplice. Defendant contends the trial court should have instructed the jury to consider only conduct that it believed beyond a reasonable doubt had been committed by defendant.

"In determining whether evidence is sufficient to support the trial court's submission of the especially heinous, atrocious, or cruel aggravator, we must consider the evidence 'in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom.' " *State v. Flippen,* 349 N.C. 264, 270, 506 S.E.2d 702, 706 (1998) (quoting *State v. Lloyd,* 321 N.C. 301, 319, 364 S.E.2d 316, 328, *sentence vacated on other grounds,* 488 U.S. 807, 102 L. Ed. 2d 18 (1988)), *cert. denied,* 526 U.S. 1135, 143 L. Ed. 2d 1015 (1999); *accord State v. Brewington,* 352 N.C. 489, 525, 532 S.E.2d 496, 517-18 (2000). " '[C]ontradictions and discrepancies are for the jury to resolve; and all evidence admitted that is favorable to the State is to be considered.' " *State v. McNeil,* 350 N.C. 657, 693, 518 S.E.2d 486, 508 (1999) (quoting *State v. Robinson,* 342 N.C. 74, 86, 463 S.E.2d 218, 225 (1995), *cert. denied,* 517 U.S. 1197, 134 L. Ed. 2d 793 (1996)), *cert. denied,* 529 U.S. 1024, 146 L. Ed. 2d 321 (2000). This Court has also held that " 'capital sentencing must focus on the individual defendant, his crimes, personal culpability, and mitigation.' " *Brewington,* 352 N.C. at 525, 532 S.E.2d at 517 (quoting *State v. Gibbs,* 335 N.C. 1, 67, 436 S.E.2d 321, 359 (1993), *cert. denied,* 512 U.S. 1246, 129 L. Ed. 2d 881 (1994)). Accordingly, determination of whether submission of the (e)(9) aggravating circumstance is warranted depends on the particular facts of each case. *Id.*

The evidence presented in this case, when considered in the light most favorable to the State, was sufficient to warrant submission of the "especially heinous, atrocious, or cruel" statutory aggravating circumstance based on defendant's participation in the murders. The

record reveals that defendant discussed his participation in the murders with Dale Wyatt. At the time, Wyatt was a soldier at Fort Bragg who was in the Cumberland County jail waiting to appear in court on a worthless-check charge. Defendant initially told Wyatt that defendant's clothes were being held as evidence in a double homicide. Defendant later told Wyatt that defendant and his "partner" dressed in ninja suits and entered the victims' home through a window. Defendant further stated that he saw Mr. Kutz, shot him with a blowgun dart, then stabbed him with a butterfly knife.

Wyatt's testimony was corroborated by the testimony of Dr. Ginn, the forensic pathologist who performed an autopsy on the body of Mr. Kutz. Dr. Ginn testified that he found "on the front surface of the left shoulder a small punctate mark of the size that would be made by a needle or dart." Dr. Ginn also testified that he observed sixteen visible stab wounds on the body of Mr. Kutz. When asked about the "mechanics of death," Dr. Ginn stated, "I would think that between half a minute to five minutes could have elapsed before" Mr. Kutz died from the effects of the stab wound to his heart. Dr. Ginn further opined that Mr. Kutz "could have been conscious any of that time up to the maximum" and that Mr. Kutz would have been capable of feeling pain and suffering during that time.

The record further reveals that when defendant was arrested, the authorities discovered in the red pickup truck a receipt for the purchase of a butterfly knife from Black Dragon Knife Shop. The authorities also found in defendant's wallet a business card from Black Dragon Knife Shop. When defendant and Thompson were detained at Fort Bragg at 1:00 a.m. on 2 December 1986, a military police officer observed a black-handled knife in an open glove compartment directly in front of defendant. The officer noticed the knife when defendant reached into the same glove compartment to retrieve his identification card.

During the ensuing investigation, human bloodstains, consistent with the blood of both victims, were found on the black-handled butterfly knife. In addition, Agent Bendure, a forensic chemist with the SBI, tested the black-handled knife and observed light-brown polyester fiber that was determined to be consistent with the upholstery of the chair in which Mr. Kutz was sitting when his throat was cut. Agent Bendure also testified on direct examination that fibers from the pink nightgown that Mrs. Kutz was wearing could be associated with both knives. Finally, Agent Bendure testified that fibers as-

sociated with the blanket and sheets in the bedroom were found on the clothing worn by both defendant and Thompson.

Considering the evidence in the light most favorable to the State, we conclude there was sufficient evidence from which the jury could conclude that defendant personally participated in the killing of both victims. In addition, defendant pled guilty to both first-degree murders. Further, defendant does not dispute that the manner in which both victims were murdered is sufficient to warrant submission of the (e)(9) aggravating circumstance. Because the evidence tends to show that defendant personally participated in both of these especially heinous, atrocious, or cruel murders, we conclude the trial court did not err in submitting the (e)(9) aggravating circumstance in this case. This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises twelve additional issues that he concedes have been decided previously by this Court contrary to his position: (1) the trial court erred by not informing the jury about the amount of time defendant would have to serve before becoming eligible for parole, if sentenced to life imprisonment; (2) the trial court erred by twice submitting the aggravating circumstance that the murder was committed during the perpetration of a felony; (3) the trial court refused to instruct the jury that certain mitigating circumstances had been found to exist by the 1988 jury; (4) the trial court erred by submitting the aggravating circumstance that the murder was especially heinous, atrocious, or cruel, after the 1988 trial court had not submitted the same circumstance based on lack of evidence; (5) the trial court refused to instruct the jury about the effect of a nonunanimous decision; (6) the trial court refused to instruct the jury that any member could decide to grant mercy to defendant based on feelings of sympathy arising from the evidence; (7) the trial court erred by denying defendant's motion to allocute; (8) the trial court erred by instructing the jurors that they were permitted to reject mitigating circumstances because they had no mitigating value; (9) the trial court erred by instructing the jurors that they "may" rather than "must" consider mitigating circumstances at Issues Three and Four; (10) the trial court erred by refusing to instruct that the burden of proof applicable to mitigating circumstances means proof showing that it is more likely than not that a mitigating circumstance exists; (11) the trial court's instruction that the jury must be unanimous to vote "No" to Issues Three and Four was unconstitutional; and (12)

the trial court erred by instructing the jury at Issues Three and Four that each juror may consider only mitigating circumstances found by that juror at Issue Two.

Defendant makes these arguments in order to allow this Court to reexamine its prior holdings and to preserve these issues for any possible further judicial review. We have thoroughly considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, these assignments of error are overruled.

## PROPORTIONALITY REVIEW

**[14]** Having concluded that defendant's capital sentencing proceeding was free from prejudicial error, we now turn to our statutory duty of ascertaining as to each murder (1) whether the evidence supports the jury's findings of the aggravating circumstances upon which the sentences of death were based; (2) whether the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

In the instant case, defendant pled guilty to two counts of first-degree murder. Following the capital sentencing proceeding as to the murder of Mr. Kutz, the jury found the following submitted aggravating circumstances: (1) the murder was committed by defendant while defendant was engaged in the commission of, or an attempt to commit, robbery, N.C.G.S. § 15A-2000(e)(5); (2) the murder was committed by defendant while defendant was engaged in the commission of, or an attempt to commit, burglary, N.C.G.S. § 15A-2000(e)(5); (3) the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (4) the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person, that being the murder of Janie Kutz, N.C.G.S. § 15A-2000(e)(11).

As to the murder of Mrs. Kutz, the jury found the following submitted aggravating circumstances: (1) the murder was committed by defendant while defendant was engaged in the commission of, or an attempt to commit, robbery, N.C.G.S. § 15A-2000(e)(5); (2) the murder was committed by defendant while defendant was engaged in the commission of, or an attempt to commit, burglary, N.C.G.S. § 15A-2000(e)(5); (3) the murder was especially heinous,

atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (4) the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person, that being the murder of Paul Kutz, N.C.G.S. § 15A-2000(e)(11).

As to both murders, two statutory mitigating circumstances were submitted for the jury's consideration: (1) defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); and (2) the catchall mitigating circumstance that there existed any other circumstance that any juror deems to have mitigating value, N.C.G.S. § 15A-2000(f)(9). The jury found (f)(1) to exist but did not find any other circumstance that it deemed to have mitigating value. As to each murder, of the nine nonstatutory mitigating circumstances submitted to it, the jury found none to exist and have mitigating value. After a thorough review of the record, including the transcripts, briefs, and oral arguments, we conclude the evidence fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary factor. Therefore, we turn to our final statutory duty of proportionality review.

[15] The purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). In conducting proportionality review, we compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *See State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

This Court has determined a death sentence to be disproportionate in seven cases: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d

163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. First, defendant was convicted of two counts of first-degree murder. This Court has never found a sentence of death disproportionate in a case where a defendant was convicted of murdering more than one victim. *See State v. Goode*, 341 N.C. 513, 552, 461 S.E.2d 631, 654 (1995).

Second, in each murder, the jury found the following three aggravating circumstances: (1) "[t]he capital felony was committed while the defendant was engaged, or was an aider or abettor, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any homicide, robbery, rape or a sex offense, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb," N.C.G.S. § 15A-2000(e)(5); (2) "[t]he capital felony was especially heinous, atrocious, or cruel," N.C.G.S. § 15A-2000(e)(9); and (3) "[t]he murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons," N.C.G.S. § 15A-2000(e)(11). There are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to support a sentence of death. *See State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). The N.C.G.S. § 15A-2000(e)(5), (e)(9), and (e)(11) statutory aggravating circumstances, which the jury found here, are among those four. *See id.*

Nonetheless, defendant contends that the sentence of death entered against him is disproportionate because his equally or more culpable accomplice, Thompson, received sentences of life imprisonment. To support his contention, defendant cites *State v. Stokes*, in which this Court found the death penalty to be disproportionate where an equally or more culpable accomplice received a life sentence in a separate trial. *Stokes*, 319 N.C. 1, 352 S.E.2d 653. However, this case is clearly distinguishable from *Stokes*. First, in *Stokes*, the defendant was convicted of one count of first-degree murder solely under the theory of felony murder. *Id.* at 24, 352 S.E.2d at 666. In the instant case, however, defendant pled guilty to two counts of first-degree murder and, by doing so, admitted guilt "upon any and all theories available to the state," including premeditation and deliberation and the felony murder rule. *Silhan*, 302 N.C. at 263, 275 S.E.2d

at 478. Second, unlike the case in *Stokes*, the murders here were found to be part of a "course of conduct . . . which included the commission by . . . defendant of other crimes of violence against another person or persons." N.C.G.S. § 15A-2000(e)(11). Third, in *Stokes*, the victim was killed at his place of business, *Stokes*, 319 N.C. at 3, 352 S.E.2d at 654, while the victims in the present case were murdered in their home. *See Chandler*, 342 N.C. at 763, 467 S.E.2d at 648 (stating that murders committed in the home of the victim particularly shock the conscience because they constitute a violation of "an especially private place, one in which a person has a right to be secure"). Therefore, *Stokes* does not support defendant's contention that the sentences of death entered against him are disproportionate. *See State v. Lemons*, 348 N.C. 335, 376-77, 501 S.E.2d 309, 334 (1998), *sentence vacated on other grounds*, 527 U.S. 1018, 144 L. Ed. 2d 768 (1999).

We also compare this case with the cases in which this Court has found the death penalty to be proportionate. While we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty of proportionality review, we reemphasize that we will not undertake to discuss or cite all of those cases each time we carry out that duty. *State v. Williams*, 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). Based on the brutal nature of the crimes, it suffices to say that these cases are more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

Accordingly, we conclude defendant received a fair capital sentencing proceeding, free from prejudicial error, and the sentences of death recommended by the jury and entered by the trial court are not disproportionate.

NO ERROR.